Filed 2/24/17

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARLEEN STACY LOPEZ,<br><br>    Defendant and Appellant. | B267935<br><br>(Los Angeles County Super. Ct. No. KA109537) |
| In re ARLEEN STACY LOPEZ,<br><br>    on Habeas Corpus. | B277301<br><br>(Los Angeles County Super. Ct. No. KA109537) |

---

\*       Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 2 through 4 of the Discussion.

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Robert Martinez, Judge. Judgment affirmed; petition denied.

Jenny Macht Brandt, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Yun K. Lee and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Arleen Stacy Lopez appeals from the judgment after her conviction for carjacking. She also petitions for a writ of habeas corpus based on ineffective assistance of counsel. We affirm the judgment and deny the petition.

## FACTUAL BACKGROUND

On April 7, 2015, Aurora Prado, a 65-year-old woman, drove a Toyota Highlander belonging to her daughter's boyfriend to the El Super market in La Puente. She pulled part way into an accessible parking space,[1] but realized the space was blocked by two shopping carts. She exited the vehicle to move the carts, leaving the door open and the engine running.

While Prado was moving the carts, appellant walked past her, climbed into the driver's seat of the Highlander, and closed the door. Prado went over to the driver's side and

---

[1] Prado described herself as "disabled."

2

"bang[ed] on the window," pleading with appellant not to take the vehicle.  Prado grasped the door handle with her left hand and tried to open the door, but appellant held it shut.  Appellant began backing the vehicle up as Prado held on to the door handle and continued to plead with appellant not to take the car.  Prado said appellant "didn't reverse slow . . . .  She go fast and makes noise with the tires . . . ."  Prado held on to the door handle until she lost her balance and had to let go, although she did not fall to the ground.  Appellant sped off.

On April 9, 2015, authorities located appellant in the Highlander in the parking structure of a casino in Highland.[2] A detective with the Los Angeles County Sheriff's Department interviewed appellant several days later.  Appellant admitted that she had taken a Highlander from an elderly Hispanic female in a supermarket parking lot.

At trial, Prado identified appellant as the person who took the Highlander.  The prosecution presented a surveillance video of the entire incident.  Prado testified that appellant had pushed her before getting into the car, but acknowledged on cross-examination that she could not see a push on the surveillance video.[3]

---

[2]      Appellant was in the front passenger seat, and a man was in the driver's seat.

[3]      Prado said the video "went too fast," presumably referring to the low frame rate of the surveillance video, which created brief but noticeable gaps in the recorded footage.  Despite the video, Prado continued to assert that she had been pushed.

3

## PROCEDURAL BACKGROUND

Appellant was charged with carjacking (Pen. Code, § 215, subd. (a))[4] and found guilty by the jury. She was sentenced to state prison for the low term of three years, with various credits and fines. Appellant timely appealed.

## DISCUSSION

### 1. Insufficient Evidence

Appellant contends there was insufficient evidence that she took the Highlander "by means of force." We hold there was sufficient evidence and reject this argument.

### a. *Applicable law*

"On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.) This standard applies whether direct or circumstantial evidence is involved. (*Ibid.*)

A person may be convicted of carjacking only upon proof of a "felonious taking of a motor vehicle . . . accomplished by means of force or fear."[5] (§ 215, subd. (a).) The carjacking

---

[4]    All further statutory references are to the Penal Code unless otherwise specified.

[5]    " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a

4

statute does not define "force," nor have we found any case law that provides a definition. But courts interpreting the carjacking statute have analogized it to the robbery statute, section 211, as both share similar language and elements.[6] (*People v. Lopez* (2003) 31 Cal.4th 1051, 1059 (*Lopez*) [holding that " ' "felonious taking" ' " had the same meaning under both § 211 and § 215 because "the carjacking statute's language and legislative history . . . demonstrate that carjacking is a direct offshoot of robbery and that the Legislature modeled the carjacking statute on the robbery statute"].) Given that both crimes are "accomplished by means of force or fear" (§§ 211, 215, subd. (a)), we may presume that the Legislature intended that those terms have substantially the same meaning in both statutes, in the absence of any clear intent to the contrary. (See *Lopez, supra*, at p. 1060 ["When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears."].)

However, "[t]he analogy between robbery and carjacking is imperfect." (*People v. Hill* (2000) 23 Cal.4th 853, 860 (*Hill*).)

---

passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

[6]     "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

For example, the penalty for carjacking is greater than for second degree robbery,[7] in part "because . . . the nature of the taking[] raises a serious potential for harm to the victim, the perpetrator and the public at large." (*People v. Antoine* (1996) 48 Cal.App.4th 489, 495.) And the Supreme Court held that, unlike robbery, a defendant could be guilty of carjacking even if the victim (in that case, an infant) was unaware of the taking. (*Hill, supra*, at pp. 860-861.) The court based this holding in part on the increased risk of danger involved in carjacking: "unlike a robbery, a carjacking subjects an unconscious possessor or occupant of a vehicle to a risk of harm greater than that involved in an ordinary theft from an unconscious individual." (*Ibid.*)

Thus, we proceed with our analysis using the law of robbery as a guide, keeping in mind that the carjacking statute reflects a heightened concern for safety.

" 'The terms "force" and "fear" as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.' " (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708, quoting *People v. Anderson* (1966) 64 Cal.2d 633, 640.) In terms of the amount of force required to elevate a taking to a robbery, "something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property." (*People v. Morales* (1975) 49 Cal.App.3d 134, 139 (*Morales*).) But the force need not be great: " ' "[a]ll the

---

[7]     Prior to the creation of the crime of carjacking in 1993, "the forcible taking of a motor vehicle was charged and prosecuted as a second degree robbery." (*Lopez, supra*, 31 Cal.4th at p. 1057.)

6

force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . ." ' " (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1259 (*Burns*), quoting *People v. Clayton* (1928) 89 Cal.App. 405, 411.) *Burns* in fact based its analysis not on the amount of force applied, but on the fact of the victim's resistance; thus, a purse snatching constituted robbery when the defendant stepped on the victim's toe and pulled the purse from her as she struggled to hold onto it. (*Burns*, *supra*, at pp. 1255, 1257 ["where a person wrests away personal property from another person, who resists the effort to do so, the crime is robbery, not merely theft"].)

### b. *Analysis*

Appellant argues that the showing of force in this case was insufficient to support her conviction.[8] She notes that she did not use a weapon, or touch or threaten the victim.[9] She

---

[8] The prosecution at trial focused on the "force" element and did not argue that the taking was accomplished through fear. Prado, the victim, provided some testimony arguably suggesting she was frightened, specifically referring to concerns she had during the incident that she might fall down and be injured by the vehicle's tires. We need not decide whether this testimony was sufficient to support a finding of fear, given our holding that the evidence was sufficient to support a finding that force was used.

[9] Respondent argues there was sufficient evidence to support a finding that appellant had pushed Prado before taking the car, assuming the jury credited Prado's testimony that she was pushed and found the surveillance video unclear enough that it did not contradict Prado. Having reviewed the surveillance video ourselves, we think it exceedingly unlikely a reasonable juror would conclude that appellant pushed

7

asserts that she applied no more force than was necessary to reverse the Highlander out of the parking space and drive off, and this was nothing more than "the quantum of force which [was] necessary to accomplish the mere seizing of the property."

We disagree. The prosecution offered evidence that appellant was driving faster than necessary simply to move the vehicle. Prado testified that appellant reversed quickly enough to "make[] noise with the tires" and was "go[ing] fast," all of which would support a conclusion by the jury that appellant was driving at relatively high speed, and thus accomplishing the taking with more force than was necessary to take the property. (See *People v. Anderson* (2011) 51 Cal.4th 989, 993, 995 [robbery defendant applied more force than necessary to move a stolen vehicle when he drove 25-30 miles per hour in a parking lot in an attempt to get through a closing electronic gate].)

Even absent evidence of fast driving, however, the law does not support as strict an application of the *Morales* rule as appellant argues. For thefts of most personal property, there is an appreciable distinction between the quantum of force necessary to seize the property from an unresisting victim, and the additional force needed to seize the property if the victim fights back. It is thus possible to apply the rules from both *Morales* and *Burns*: if the thief is applying no more force than necessary to lift the property and carry it off, there is no robbery; if the victim resists, more force is needed and the theft

Prado—even the prosecutor conceded there was no push visible on the video. We need not reach the issue, however, given our holding.

8

becomes a robbery. But carjacking presents a circumstance in which the amounts of force may be identical in both situations. Given the power of even a slow-moving vehicle, a thief attempting to drive the car away need not apply additional force to shake off a victim trying to stop the car from moving. Under such a circumstance, *Morales* and *Burns* are in tension with one another, and either potentially is applicable.

Appellant urges us to apply the rule from *Morales*, but we think the more appropriate rule is that of *Burns*. Under *Burns*, a victim's physical resistance will convert a theft into a robbery, regardless of the amount of force involved. (See *Burns, supra*, 172 Cal.App.4th at p. 1257.) It is sensible to treat a theft more severely under the law when it involves overcoming a victim's resistance, because the risk of harm to the victim is greater, and the crime is commensurately more serious. That risk of harm certainly exists when a victim resists the taking of a vehicle, even if the vehicle is moving just as it would were the victim not present. As discussed above, the law recognizes that the taking of a car from the immediate presence of its driver or passengers creates a fundamentally more hazardous situation than the taking of most other forms of property, and thus the Penal Code imposes a greater penalty for carjacking than for second degree robbery. Similarly, that potential for harm makes it appropriate to treat the taking of a vehicle more severely when the victim physically tries to stop the vehicle, even if the only force the perpetrator applies is the force necessary to move the vehicle.[10] We therefore hold that a

---

[10] Appellant claims that *People v. O'Neil* (1997) 56 Cal.App.4th 1126 rejected a defendant's argument that "force" has different meanings under the carjacking and robbery

9

perpetrator accomplishes the taking of a motor vehicle by means of force, as defined under section 215, when the perpetrator drives the vehicle while a victim holds on or otherwise physically attempts to prevent the theft.[11]

Under this analysis, there clearly was sufficient evidence to support appellant's conviction. Both the surveillance video and Prado's testimony established that Prado held onto the Highlander and tried to stop the vehicle as appellant backed out of the parking space. Appellant continued to back up until Prado had to let go. This was sufficient evidence to support the jury's finding that appellant had used force to take the vehicle from Prado.

## 2. Failure to Instruct on Lesser-related Offenses[*]

Appellant argues that the trial court erred in not instructing the jury on two lesser offenses, theft (§ 487) and the unlawful taking or driving of a vehicle (Veh. Code, § 10851). We reject this argument.

---

statutes because of the greater potential for harm to victims during a carjacking. Appellant misreads *O'Neil*: the defendant never made such an argument, and the court in fact pointed to the great potential for harm as a reason to reject defendant's other arguments attempting to narrow the scope of the carjacking statute. (*Id*. at p. 1133.)

[11] In our holding we in no way mean to suggest that carjackings only arise when victims attempt to stop the taking. Our holding applies when there is no evidence that the taking was accomplished by means of fear, and the only force applied is the force necessary to move the vehicle.

[*] See footnote, *ante*, page 1.

### a. Proceedings Below

Before trial, defense counsel stated its intention to request a jury instruction for Vehicle Code section 10851. The court said "That is going to depend on the evidence." The prosecution said nothing on the topic. Later, after the parties submitted proposed instructions, the court denied defense counsel's request for instructions for both Vehicle Code section 10851 and Penal Code section 487, citing cases holding that neither was a lesser-included offense of carjacking. Again, the prosecution did not comment. The issue arose again after the jury reached its verdict and defense counsel moved for a new trial, arguing there had been sufficient evidence to support instructions for Vehicle Code section 10851 and Penal Code section 487. The prosecution opposed the motion, arguing that the court could only instruct on the lesser-related charges if the parties agreed. The court denied the motion, stating that prior law entitling defendants to instructions on lesser-related offenses had been overturned.

### b. Analysis

Appellant concedes that neither theft nor unlawful taking or driving a vehicle are lesser-included offenses of carjacking.[12]  (*People v. Montoya* (2004) 33 Cal.4th 1031, 1033; *People v. Ortega* (1998) 19 Cal.4th 686, 693.)  Appellant further concedes that defendants are not unilaterally entitled to instructions on lesser-*related* offenses.  (*People v. Birks* (1998) 19 Cal.4th 108, 136 (*Birks*).)  But appellant notes, correctly,

---

[12]    Courts must "giv[e] instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present." (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

11

that *Birks* did not "foreclose the parties from agreeing that the defendant may be convicted of a lesser offense not necessarily included in the original charge." (*Id.* at p. 136, fn. 19.) Appellant argues that the prosecution's lack of objection to defense counsel's requested instructions constituted implied consent that those instructions be given. Thus, appellant asserts, the trial court had discretion to provide those instructions, and erred in concluding that it did not.

We disagree. The trial court never indicated it would give the instructions proposed by defense counsel; thus, there was nothing to which the prosecution could object. A lack of objection does not imply consent when there is no reason for an objection to be made; the far more logical conclusion is the prosecution said nothing because it agreed with the court's ruling.

Appellant argues the prosecution should have objected, had it wished to, when defense counsel first proposed a Vehicle Code section 10851 instruction before trial, and again when defense counsel submitted its proposed written instructions. But appellant does not explain why the prosecution had any obligation or reason to object at these times when, again, the trial court had yet to indicate that it would give the instructions.

Appellant's cited cases are unavailing, because all involve defendants who failed to object to instructions that the court actually gave. Under those facts, courts have found that the defendants impliedly consented to the instructions that were given. (See *People v. Toro* (1989) 47 Cal.3d 966, 973-974; *Williams v. Southern Pac. R.R. Co.* (1895) 110 Cal. 457, 462; *People v. Whitmer* (2014) 230 Cal.App.4th 906, 920.) Assuming

12

these cases apply to prosecutors as well, an issue we need not decide, they have no application here when the proposed instructions were never given. The trial court did not err.

## 3. Prosecutorial Misconduct and Ineffective Assistance of Counsel

Appellant argues that the prosecutor committed misconduct by saving his arguments concerning "force and fear" for his rebuttal, rather than raising them in his initial closing statement. Appellant further argues that defense counsel's failure to object to the purported misconduct constituted ineffective assistance of counsel. For the reasons below, we find no reversible error.

### a. Proceedings Below

The jury instructions on carjacking contained five elements, the fourth being that "the defendant used force or fear to take the vehicle or to prevent [the victim] from resisting." During closing, the prosecutor discussed each element. When he reached the fourth, he said, "I'm going to skip the fourth one. The fourth one about use of force or fear because that is going to be the crucial portion of this case. The crucial portion is going to be was there force or fear used in the commission of this crime[.] That is going to be critical, and I'm going to take some time, separate time, to discuss those facts with the law. So just hang tight for that."

At the end of his closing, the prosecutor said, "I'm going to come back to talk to you about the fourth element[,] which is the force or fear[,] after the defense."

Defense counsel then presented her closing. On the topic of force, she stated that "you can't have carjacking without force or fear," and argued that there was no pushing on the

13

surveillance video, "no weapon used.  No violence.  No struggle.
[¶]  Arle[en] Lopez walked into the car quickly and closed the
door and locked it."

On rebuttal, the prosecutor focused almost entirely on
the force element.  He acknowledged the video did not show
any pushing, but argued that "[t]he crux of the case has to do
[with] what happened, not 'before' the defendant took control of
the vehicle. . . .  [¶]  The focus is was there any force used
'after' Ms. Lopez took initial possession of the vehicle."  He
then explained that "[t]he force used in this case occurred
when Ms. Lopez began to drive away.  You have someone
trying to get their vehicle back, and you have the defendant
driving away or trying to drive away.  That is force."  The
prosecutor described appellant "driv[ing] away despite this
elderly woman hanging on practically for dear life."

### b. *Analysis*

Appellant argues that the prosecutor "sandbagged" the
defense by making a perfunctory closing statement and
reserving argument on the "sole issue in the case" until his
rebuttal.  But defense counsel did not object to the purported
misconduct at trial, either when the prosecutor indicated he
was saving argument for rebuttal, or during the rebuttal itself.
Thus, appellant has forfeited the issue on appeal.  (*People v.
Cunningham* (2001) 25 Cal.4th 926, 1000 (*Cunningham*).)

Appellant argues that defense counsel's failure to object
constituted ineffective assistance of counsel in violation of the
Sixth Amendment of the federal Constitution and the
California Constitution, article I, section 15, a claim raised
both in this appeal and in a separate petition for a writ of
habeas corpus.  To prevail on this claim, appellant must show

14

"(1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*Cunningham, supra*, 25 Cal.4th at p. 1003.)

We do not reach the question of whether this conduct fell below an objective standard of reasonableness, because we find the second prong of the analysis dispositive in this case. The evidence against appellant was overwhelming: the surveillance video, Prado's uncontested testimony, and the statement appellant made to the police made exceedingly clear that appellant's conduct satisfied all the elements of carjacking. The only issue arguably in dispute was whether appellant had used force to effect the taking, but on this point Prado's testimony and the video indicated that appellant rapidly reversed the vehicle as Prado held on, evidence enough to establish use of force. Even had defense counsel had an opportunity to address the prosecution's arguments concerning force, we have difficulty conceiving what she might have said that would have altered the outcome of the case.

Appellant argues that the evidence that the force applied "rose above the level of force necessary to accomplish the seizure of the car was exceedingly weak." But even if defense counsel had argued that appellant used no more force than was necessary to move the vehicle, that would not have mitigated appellant's guilt, given that the victim was clinging to the car and resisting the taking. And, we think it unlikely that the jury would ignore Prado's uncontested testimony that

15

appellant backed the car up quickly enough that the tires screeched, or the video showing Prado being pulled along, all of which undercuts the notion that appellant was doing nothing more than backing the car up.

Because there is not a reasonable probability that appellant would have achieved a more favorable result had defense counsel objected to the prosecution's purported misconduct, we hold that appellant was not deprived of effective representation. On this basis, we also deny appellant's petition for a writ of habeas corpus.

## 4. Cumulative Prejudice

Because we find that none of appellant's asserted errors have merit, we reject appellant's argument that they cumulatively require reversal.

## DISPOSITION

The judgment is affirmed. The petition for a writ of habeas corpus is denied.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

16