Filed 10/27/20  P. v. Bell CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOEY ERRON BELL,<br><br>Defendant and Appellant. | F077651<br><br>(Super. Ct. No. F17906845)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Carlos A. Martinez, and Tracy Yao, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Joey Erron Bell (defendant) stands convicted, following a jury trial, of second degree robbery. (Pen. Code, § 211.)[1] He admitted having served a prior prison term (§ 667.5, former subd. (b)), and was sentenced to four years in prison and ordered to pay various fees, fines, and assessments. We hold: (1) The trial court did not err by failing to give a unanimity instruction; (2) The trial court did not commit prejudicial error when responding to the jury's request for clarification; and (3) Defendant is not entitled to reversal based on the cumulative effect of asserted errors; but (4) The one-year prior prison term enhancement must be stricken.[2] We modify the judgment accordingly and, as modified, affirm.

## FACTS

## I

### PROSECUTION EVIDENCE

On November 16, 2017, Mark B. was working as a loss prevention officer at a department store in a mall in Fresno County.[3] Loss prevention officers at the store wear regular street clothing.

On November 16, Mark saw defendant enter the Levi's department, select two pairs of jeans from the display shelf, and then walk away with the jeans in his hands. As Mark watched on security camera monitors in a control room, defendant went over to another department, produced a blue bag from his waistband area, and put the Levi's

---

[1]  All statutory references are to the Penal Code unless otherwise stated.

[2]  In addition, we decline defendant's request to express an opinion concerning whether a Court of Appeal opinion that has long been accepted by the California Supreme Court, was wrongly decided.

[3]  Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials. No disrespect is intended.

Unspecified dates in the statement of facts are to the year 2017.

2.

inside the bag.[4]  A woman and two children met up with him.  The woman handed defendant a pair of shoes, and he put those in the bag as well.

Mark went out onto the floor and positioned himself behind defendant, who was close to the store doors.  Mark had his two-way radio out and tried to make it obvious he was a loss prevention officer.[5]  Defendant said "what's up" to Mark, as if asking what Mark was going to do.  Mark responded, "hey, what's up?"  Defendant looked at Mark and gave him a little nod, then walked directly out of the store.  Alarms went off at the door.

Defendant kept walking as the alarms sounded.  Mark contacted him on the sidewalk in front of the doors.[6]  Mark identified himself as a loss prevention officer and asked to have the jeans back.  Defendant said he had paid for them.  Mark disputed this and said he just wanted the jeans back.  Defendant cursed and told Mark to get away from him.  When Mark tried to grab the jeans, defendant "ripped" the bag away and shoved Mark's hands away, slapping Mark's arms with enough force that they were red afterwards.  Defendant then walked to a car in the parking lot.

Defendant got into the car.  The window was rolled down.  Mark, who was on the phone with 911, was able to get the vehicle's license plate number and give it to the 911 operator.[7]  As the car was being driven away by the female Mark had seen inside the store, defendant looked at Mark and yelled, "I got that thing on me."  Defendant was

---

[4]     A recording of the surveillance video was played for the jury.

[5]     Mark was trying to "burn" defendant.  A "burn" occurs when a loss prevention officer is alone inside the store and does not want to try to apprehend the subject, so the officer makes his or her presence known nonverbally, hoping the subject will catch on and "dump" the merchandise in the store.

[6]     Mark described himself as being "very vocal" and not quiet when he spoke to defendant.

[7]     An audio recording of the 911 call was played for the jury.

reaching into his jacket. Mark interpreted what defendant said to mean defendant had a gun on him. Mark, who was scared, went back into the store.

Fresno Police Detective Xiong investigated the incident. He determined that the license plate number was for a vehicle registered to T.C., who resided on North Marks. A law enforcement database listed defendant as also residing at that address. Xiong obtained a still photograph from the store's surveillance video, compared it to a photograph of defendant, and concluded defendant was the person who committed the robbery. Xiong assembled a photographic lineup and showed it to Mark. Mark identified defendant as the perpetrator.

Defendant was arrested on November 20. His residence was searched, and the stolen items were recovered.

## II

### DEFENSE EVIDENCE

Defendant testified and admitted he had a prior felony conviction for a crime of moral turpitude. On November 16, he went to the department store with his cousin, T.C., and her two children. As defendant entered the store, T.C. gave him a bag in which to put items to steal.

When defendant entered the store, he intended to exchange something for T.C. and to buy something. Once inside, he put jeans in the bag. He originally was going to pay for them, but he "wasn't really in the right state of mind that day." When he put the jeans in the bag, he intended to take them without paying. T.C. handed him some slippers, and he also put them in the bag. He then walked toward the exit.

Mark walked up to defendant inside the store, but never identified himself as a loss prevention officer. Defendant thought he was "[j]ust a random person."

Once defendant, T.C., and the children exited the store and walked toward their car, Mark aggressively approached defendant. Defendant would have given him back the items had he known Mark was a loss prevention officer, but Mark never identified

4.

himself as such and was not wearing anything to show he worked for the store.[8] Although defendant had heard the alarms sound when he left the store and Mark contacted him immediately after that, defendant did not think Mark was someone from the store. Defendant never saw a radio on Mark, and thought Mark was a "random stranger" who was trying to rob defendant. As Mark kept asking for his stuff back, and given the way he was acting, defendant thought Mark probably was a store employee, but he did not know for certain.

When Mark reached for the bag, he tore it a little bit. He kept saying to give his stuff back. Defendant, who had been robbed before, slapped Mark's hand away to defend himself. Defendant barely hit Mark's hand. He thought Mark wanted to fight.

Defendant, T.C., and the children got into the car with defendant on the passenger side. The windows were up. Mark was standing by the store doorway. Although defendant said "fuck you" to Mark when Mark kept trying to reach for the bag, he did not say anything else. Defendant never said, "I got that thing on me." It was not until defendant spoke with officers that he found out Mark worked for the department store.

## DISCUSSION

### I

#### FAILURE TO GIVE UNANIMITY INSTRUCTION

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." "In California, '[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.' [Citation.] It thus is robbery when the property was peacefully acquired, but force or fear was used to carry it away. [Citation.]" (*People v.*

---

[8] On rebuttal, Mark denied being aggressive with defendant and testified that once outside, he immediately stated he was a loss prevention officer.

*Anderson* (2011) 51 Cal.4th 989, 994; see *People v. Estes* (1983) 147 Cal.App.3d 23, 28 (*Estes*).)

Here, the prosecutor argued to the jury that both force and fear were shown by the evidence: force, when defendant slapped Mark's hands away; and fear, when defendant made what Mark interpreted as a threat that defendant had a gun. Defendant contends that because the prosecutor adduced evidence of multiple acts that could have constituted force or fear, and argued both instead of making an election, the trial court had a sua sponte duty to give a unanimity instruction.[9] Failure to do so, he says, was prejudicial error. The Attorney General says no such instruction was required. We agree with the Attorney General.

In order to convict in a criminal case, a jury verdict must be unanimous. (*Ramos v. Louisiana* (2020) 590 U.S. ___, ___ [140 S.Ct. 1390, 1397]; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)[10] "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Russo*, *supra*, at p. 1132, italics omitted.) In other words, "[a] unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count. [Citations.]" (*People v. Grimes* (2016) 1 Cal.5th 698, 727.) "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even

---

[9] CALCRIM No. 3500, the standard unanimity instruction, reads: "The defendant is charged with ___ *<insert description of alleged offense>* [in Count ___] [sometime during the period of ___ to ___]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

[10] Defendant's jury was so instructed.

though there is no single offense which all the jurors agree the defendant committed.' [Citation.] . . . 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count.' [Citation.]" (*Russo*, *supra*, at p. 1132, italics omitted.)

"But the unanimity instruction is not required ' "where multiple theories *or acts* may form the basis of a guilty verdict on one discrete criminal event." ' [Citation.] '[W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or . . . the "theory" whereby the defendant is guilty.' [Citation.] This is true even if the theories are based on different facts. [Citation.]" (*People v. Grimes*, *supra*, 1 Cal.5th at p. 727; see *Russo*, *supra*, 25 Cal.4th at pp. 1132, 1135.)[11]

In the present case, defendant neither requested that a unanimity instruction be given nor objected to its omission. Nevertheless, the issue has not been forfeited. A trial court has a sua sponte duty to give such an instruction " 'where the circumstances of the case so dictate.' [Citation.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) In making this determination, "the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the

---

[11] A unanimity instruction also is not required "when the acts are so closely connected in time as to form part of one transaction. [Citations.] This branch of the 'continuous conduct' exception [citation] applies if the defendant tenders the same defense or defenses to each act and if there is no reasonable basis for the jury to distinguish between them. [Citations.]" (*People v. Crandell* (1988) 46 Cal.3d 833, 875, overruled on another ground in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) As the parties agree this exception does not apply in the present case, we do not discuss it further.

defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Russo*, *supra*, 25 Cal.4th at p. 1135.) A claim the trial court erroneously failed to give a unanimity instruction is subject to our de novo review. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

No unanimity instruction was required in this case. As the evidence established only one distinct taking, it showed a single discrete crime of robbery. (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1184-1185, superseded by statute on another point as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1116; cf. *People v. Davis* (2005) 36 Cal.4th 510, 560-561; *People v. Curry* (2007) 158 Cal.App.4th 766, 782-783.) The evidence left room for disagreement, if at all, only as to whether the taking was committed by force or by fear. Jurors did not need to agree unanimously on that point. (Compare *People v. Grimes*, *supra*, 1 Cal.5th at pp. 727-728 [where evidence showed only one crime of murder, unanimity not required where evidence left room for disagreement concerning how crime was committed or the defendant's precise role]; *Russo*, *supra*, 25 Cal.4th at pp. 1132-1133 [crime of burglary requires entry with specified intent; if evidence showed two different entries with burglarious intent, unanimity instruction would be required, but if evidence only showed single entry but possible uncertainty as to exact burglarious intent, unanimity instruction would not be required]; *People v. Leffel* (1988) 203 Cal.App.3d 575, 586-587 [where the defendant charged with one count of vehicular manslaughter, element of which is commission of unlawful act not amounting to felony, possible alternative Vehicle Code violations set forth in trial court instruction were merely alternate ways of proving necessary element of same offense] with *People v. Hernandez*, *supra*, 217 Cal.App.4th at pp. 570-571 [unanimity instruction required where evidence showed two discrete acts of gun possession, either of which could have constituted charged offenses]; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185 [unanimity instruction required where evidence showed

8.

possession of multiple firearms, each one of which could have constituted a separately chargeable crime].)

Defendant appears to argue a unanimity instruction was required because the evidence showed more than one act that could have been charged as discrete crimes: leaving the store with unpaid-for merchandise, which could have been charged as shoplifting; slapping Mark's hands away, which, if not self-defense, could have been charged as battery; and the statement and gesture, which, if Mark interpreted them correctly, could have been charged as a criminal threat. To the extent defendant is making such a claim, it misses the mark. The question is whether the jury could have found more than one crime of *robbery* was committed. Because the answer necessarily is no, the trial court did not err by failing to give a unanimity instruction. (See *People v. Grimes*, *supra*, 1 Cal.5th at pp. 727-728; *Russo*, *supra*, 25 Cal.4th at pp. 1132-1133.)

## II

### RESPONSE TO JURY'S REQUEST FOR CLARIFICATION

Defendant contends the trial court prejudicially misinstructed the jury on force and fear when, during deliberations, the jury asked for clarification. We disagree.

### A.      Background

The trial court instructed the jury prior to counsels' summations. Insofar as is relevant, it told jurors to consider all the instructions together, and that words and phrases not specifically defined in the instructions were to be applied using their ordinary, everyday meanings (CALCRIM No. 200); and that the charged crime required proof of the union or joint operation of act and wrongful intent, and robbery required the intentional commission of the prohibited act with a specific intent (CALCRIM No. 251). Pursuant to CALCRIM No. 1600, it told jurors that in order to prove defendant was guilty of robbery, the People must prove, inter alia, "the defendant used force or fear to take property or to prevent the person from resisting"; "[t]he defendant's intent to take

9.

the property must have been formed before or during the time he used force or fear"; and "[f]ear," as used in the instruction, meant "fear of injury to the person himself."

During deliberations, jurors sent out a note asking, "What is force[?]"  After an unreported discussion with counsel in chambers, the court stated it was going to give a definition from *People v. Lopez* (2017) 8 Cal.App.5th 1230.  The court acknowledged "force" was a commonsense term for a jury, but recognized it had an obligation to put forth its best effort to answer the jury's question.  The jury was then brought back into the courtroom, and this ensued:

> "[THE COURT:]  So you have two requests.  The first is read back of Mr. Bell's testimony. . . .  [¶] . . . [¶]
>
> "Additionally, you asked what is force.  I'm going to read you an instruction and then send back the instruction as follows:  In terms of the amount of force or fear required for a robbery, something more is required than just that amount of force or fear which is necessary to accomplish the mere seizing of the property.  But the force or fear need not be great.  All the force that is required to make the offense a robbery is such force or fear as is actually sufficient to overcome the victim's resistance.
>
> "So I don't remember from the note.  Could I just see a raised hand of who our foreperson is?  Okay.  Juror Number Six.  Sir, do you believe that that answers the jury's inquiry about the definition of force?
>
> "[JUROR] NUMBER SIX:  (Shakes head).
>
> "THE COURT:  I'm going to send that back.  If there's any further questions about that, I'd be happy to assist in any way that we can.
>
> "And so what I'm going to do is send that back.  You are going to see my chicken scratch on the instruction.  That's the word 'or fear.'  That's my writing. . . .  [¶] . . . [¶]
>
> "Anything further Mr. Foreperson that you think addresses your requests?
>
> "[JUROR] NUMBER SIX:  Can I make another request right now?
>
> "THE COURT:  Sure.

10.

"[JUROR] NUMBER SIX: For the term 'force' does the force have to be intended or no?

"THE COURT: Have to be what?

"[JUROR] NUMBER SIX: Does the force is [*sic*] to be intended for it to be considered force or is it any force? I know what force is. This is a different question from force. I'm asking a different question. If the defendant say 'used force.' Does the force he used have to be intended or say was the force accidental?

"THE COURT: I understand your question. I'll consult with the attorneys and we'll get you an answer. . . . We'll most likely send in the answer to that question in writing. . . ."

A discussion was held off the record. The court then sent the following note to the jury: "In response to your follow-up question about 'force,' the court refers you to instruction number 251." CALCRIM No. 251 read, in its entirety: "The crime charged in this case requires proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crime of Robbery, as charged in count One, that person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime."

B.    **Analysis**

Defendant now asserts the court's answer to the jury's question was confusing, because it "added 'fear' to a legal definition of force in a way that was nonsensical in context."[12] He says adding "fear" was not responsive to questions about "force," so it improperly suggested jurors should consider the fear element. He claims the error impliedly directed a verdict for the prosecution, amounted to an improper comment on the evidence, and lowered the prosecution's burden of proving each of the elements of robbery beyond a reasonable doubt. The Attorney General says defendant's claim was

---

[12]    The opinion on which the court relied addressed only "force," not "fear." (*People v. Lopez*, *supra*, 8 Cal.App.5th at p. 1235.)

11.

forfeited because the record does not show counsel objected below and, in any event, defendant's substantial rights were not violated because the trial court's response was appropriate, and defendant has failed to demonstrate prejudice. We find no cause for reversal.

"Section 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law. [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 985, fn. omitted.)[13] "This means the trial 'court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.]' [Citation.] However, '[a] definition of a commonly used term may nevertheless be required if the jury exhibits confusion over the term's meaning. [Citation.]' [Citation.]" (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1015; see, e.g., *People v. Beardslee* (1991) 53 Cal.3d 68, 97; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1331.)

"An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury. [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.) "When a question shows the jury has focused on a particular issue, or is leaning in a

---

**13** Section 1138 states, in pertinent part: "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel . . . ."

certain direction, the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination." (*People v. Moore*, *supra*, 44 Cal.App.4th at p. 1331.)

We review claims of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "In assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled. [Citations.]" (*People v. Tate* (2010) 49 Cal.4th 635, 696.) " ' " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " [Citations.]' [Citation.]" (*People v. Smithey*, *supra*, 20 Cal.4th at pp. 963-964.)

We turn first to the Attorney General's claim of forfeiture. "When a trial court decides to respond to a jury's note, counsel's silence waives any objection under section 1138. [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 729, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; see *People v. Boyce* (2014) 59 Cal.4th 672, 699.) On the other hand, section 1259 permits review of any instruction given, without objection being made in the trial court, if the defendant's substantial rights were affected thereby.

To the extent defendant contends the trial court's answer to the jury's question was confusing, in that it added "fear" to a legal definition of force that was nonsensical in context, we conclude the claim has not been preserved for appeal. If defendant believed the court's response might confuse the jury, he should have requested clarifying language. (See *People v. Boyce*, *supra*, 59 Cal.4th at p. 699; *People v. Coddington* (2000) 23 Cal.4th 529, 603, superseded by statute on another point as stated in *Verdin v. Superior Court*, *supra*, 43 Cal.4th at p. 1107, fn. 4 & overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) We recognize the discussion concerning the trial court's response to the jury's question took place off the

13.

record and so was not reported. Nevertheless, if defendant had a problem with the trial court's language, it was incumbent upon him to make a record of that fact.**14**

We do not find forfeiture with respect to defendant's other claims of error arising from the trial court's adding "fear" to its response to questions concerning "force." We conclude they lack merit, however.

"First and foremost, what matters to the validity of a conviction is whether the jury is correctly instructed on the *elements* of a crime . . . ." (*People v. Matthews* (2019) 32 Cal.App.5th 792, 798.) " 'Jury instructions must be responsive to the issues, which in a criminal case, are determined by the evidence [citation][.]' [Citation.]" (*People v. Runnion* (1994) 30 Cal.App.4th 852, 858, fn. omitted.) As we have discussed, one element of robbery is that the taking of personal property is accomplished, either with respect to acquisition or asportation, by force *or fear*. Had the trial court not included "fear" in its response, we might well be addressing a claim the response was prejudicially incomplete and directed the jury to focus solely on the issue of force, to defendant's detriment since he admitted slapping Mark's hands away.

In any event, "giving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 67.) Defendant fails to convince us we should reach a different conclusion here.

First, it is not reasonably likely jurors believed the trial court was suggesting they should consider the fear element. It is apparent the court was simply attempting to clarify

---

**14**     For the first time in his reply brief, defendant asserts that if we find forfeiture, then trial counsel's performance was deficient and thereby denied defendant his constitutional right to the effective assistance of counsel. "It is rarely appropriate to resolve an ineffective assistance claim on direct appeal [citation]; we certainly will not do so where, as here, the claim is omitted from the opening brief and thus waived [citations]." (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

the manner of taking required for robbery, which, as jurors already had been instructed, was by means of force *or fear*.

Second, the trial court's response did not amount to a comment on the evidence, improper or otherwise. Even if it could somehow be viewed as commentary, a timely objection was required to preserve the issue for appeal. (*People v. Monterroso* (2004) 34 Cal.4th 743, 781.) The record contains no such objection. Moreover, assuming the issue was preserved, "a trial court has 'broad latitude in fair commentary, so long as it does not effectively control the verdict.' [Citation.]" (*Id*. at p. 780.) The trial court's response was fair and did not usurp the jury's factfinding power or otherwise control the verdict.

Third, the trial court did not impliedly direct a verdict for the prosecution or lower the prosecution's burden of proof. There is no reasonable likelihood jurors interpreted the trial court's response as suggesting they consider fear instead of force, particularly in light of the fact the trial court had instructed that it was not the court's role to tell them what it thought the verdict should be, and that they were not to take anything the court said as an indication of what it thought about the facts, the witnesses, or what the verdict should be. "A jury is presumed to follow its instructions. [Citation.]" (*Weeks v. Angelone* (2000) 528 U.S. 225, 234.)

## III

### CUMULATIVE PREJUDICE

Defendant contends the trial court's asserted errors in failing to give a unanimity instruction and in responding to the jury's questions as it did combined to deprive him of his rights to due process and a fair trial. We disagree. The trial court did not err by failing to give a unanimity instruction, and any possible error in its response to the jury was not prejudicial. There was no error to accumulate. (See *People v. Williams* (2013) 58 Cal.4th 197, 291.)

15.

# IV

## *ESTES*

In *Estes*, the court concluded that under section 211, a defendant is guilty of robbery, as opposed to mere theft and subsequent assault, if he or she, having gained possession of property without the use of force or fear, resorts to force or fear while carrying away the stolen items. (*Estes*, *supra*, 147 Cal.App.3d at pp. 27-28.) Defendant now contends *Estes* was wrongly decided and improperly expanded the law of robbery beyond the intent of the drafters of section 211. He acknowledges we are bound to follow precedent, but he asks us to express our "independent judgment" concerning whether *Estes* was correctly decided, "as if the slate were blank."

We decline to undertake such an exercise. We are not bound by *Estes*, as it is the decision of another District Court of Appeal. (See *People v. Kim* (2011) 193 Cal.App.4th 836, 847.) *Estes*'s holding with respect to robbery, however, has long been approved and adopted by the California Supreme Court (e.g., *People v. Williams* (2013) 57 Cal.4th 776, 787; *People v. McKinnon* (2011) 52 Cal.4th 610, 686-687; *People v. Anderson*, *supra*, 51 Cal.4th at p. 994; *People v. Gomez* (2008) 43 Cal.4th 249, 258; *People v. Holt* (1997) 15 Cal.4th 619, 670-671; *People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8; *People v. Anderson* (1966) 64 Cal.2d 633, 638), and we *are* bound by its decisions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455).

# V

## SENATE BILL NO. 136

At sentencing, the trial court imposed the middle term of three years for the robbery. That sentence was enhanced by one year, pursuant to section 667.5, former subdivision (b), based on defendant's service of a prior prison term.

Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) amended section 667.5, subdivision (b) to provide for imposition of a prior prison term enhancement only where the prior offense was a sexually violent offense as defined in

16.

subdivision (b) of Welfare and Institutions Code section 6600.  (§ 667.5, as amended by Stats. 2019, ch. 590, § 1.)  Defendant's prior conviction does not meet this requirement, and defendant contends the enhancement based thereon must be stricken.  The Attorney General agrees, and so do we.  We will order the judgment modified accordingly.

## DISPOSITION

The judgment is modified to strike the one-year enhancement imposed pursuant to section 667.5, former subdivision (b).  As so modified, the judgment is affirmed.  The trial court is directed to cause to be prepared an amended abstract of judgment containing said modification, and to forward a certified copy of same to the appropriate authorities.


DETJEN, J.

WE CONCUR:


HILL, P.J.


FRANSON, J.