Filed 10/2/23  P. v. Darrough CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL JOSEPH DARROUGH,<br><br>      Defendant and Appellant. | C097124<br><br>(Super. Ct. No. 21FE005177) |

Following a series of high-speed police chases, defendant Michael Joseph Darrough was charged with two counts of driving in willful or wanton disregard for the safety of persons or property while fleeing from a pursuing peace officer (Veh. Code, § 2800.2, subd. (a); counts one and two), attempted carjacking (Pen. Code, §§ 664, 215,

1

subd. (a)[1]; count three), carjacking (§ 215, subd. (a); count four), and driving on a highway in the opposite direction of traffic while willfully fleeing or attempting to elude a pursuing peace officer (Veh. Code, § 2800.4; count five). Defendant pleaded no contest to counts one and two, and a jury found him guilty on the remaining counts. In connection with his no contest pleas and jury trial, defendant admitted certain aggravating factors and that he had suffered a prior serious felony conviction (§§ 667, subd. (a), 1192.7, subd. (c)) that qualified as a strike under the three strikes law (§§ 667, subds. (b)-(i), 1170.12). The trial court sentenced him to an aggregate term of 14 years four months in prison.

Defendant appeals, arguing reversal is required due to insufficient evidence, instructional errors, cumulative error, and sentencing error. We reject defendant's contentions and affirm.

## FACTUAL BACKGROUND

*No Contest Pleas: Counts One and Two*

On February 24, 2021, and March 18, 2021, defendant fled from police officers after they attempted to perform a traffic stop. During these chases, defendant drove his car at speeds exceeding 100 miles per hour on city streets and failed to stop at multiple stops signs and at least one red light. The pursuing officers, who were driving standard patrol vehicles, were unable to apprehend defendant. In the first chase, defendant drove a Toyota Avalon. The record does not disclose the make or model of the car defendant drove in the second chase.

*Jury Trial: Counts Three Through Five*

On the morning of March 25, 2021, officers from the Sacramento Police Department were searching for a car associated with defendant in a north Sacramento

---

[1] Undesignated statutory references are to the Penal Code.

2

neighborhood--a gold Toyota Avalon. Around 11:00 a.m., an officer found the car parked outside a residence with a woman sitting in the front passenger seat. Shortly thereafter, a man, later identified as defendant, got into the car and drove away. The officer alerted other officers and then followed the car.

When multiple police officers in standard patrol vehicles attempted to stop defendant by activating their overhead emergency lights and sirens, he accelerated and a high-speed chase ensued. During the chase, which began on the freeway and continued onto surface streets, defendant violated numerous traffic laws, including driving at speeds in excess of the speed limit (e.g., 60 to 90 miles per hour on surface streets), crossing into oncoming traffic, and failing to stop at multiple red lights. Due to heavy traffic and the need to stop at red lights to clear intersections, the pursuing officers lost sight of defendant's car. When an officer found defendant's car a few minutes later in a residential neighborhood, the driver's door was open and the car appeared to have crashed into a fence.

Meanwhile, defendant jogged up to a Honda Accord that was stopped at a stop sign. In a loud and "forceful" voice, he told the driver (Valerie) that he wanted or needed a "ride." Defendant attempted to open the driver's door, but it was locked. Valerie, who was scared and in "panic mode," rolled up her window. She then reached into the backseat to make sure the rear driver's side door was locked and tried to roll that window up. She drove off after defendant attempted to unlock the rear driver's side door by reaching through the open window. At trial, Valerie described defendant as a large, heavy-set man with a goatee. The incident involving Valerie and defendant was captured by a video surveillance system and the video was played for the jury.

Immediately after the incident with Valerie, defendant ran up to a white Toyota pickup truck, "jumped" into the front passenger seat before the driver (Ryan) could lock the door, and said, "go" or "drive." Ryan, who was startled and/or nervous, complied. At trial, Ryan described defendant as a "[b]ig guy" with a bald head and "some tattoos."

3

A minute or so later, a police officer, who had been alerted to defendant's location by a bystander, initiated a traffic stop on the Toyota.[2]  In response, Ryan pulled over and told defendant to get out of the truck.  Defendant did not do so, but instead offered Ryan "a bunch of cash" to keep driving.  In the meantime, additional officers arrived at the scene.

A police officer approached Ryan's truck on foot from the rear with his gun drawn and ordered Ryan and defendant to put their hands up and stay in the truck.  Ryan put his hands up but defendant did not.  When Ryan started to get out of the truck with his hands up, multiple officers directed him to get back into the truck at gunpoint.  As Ryan was attempting to comply, defendant pushed Ryan out of the truck as he was moving his body into the driver's seat.  Defendant then sped off and led police on another high-speed chase involving numerous patrol vehicles and a police airplane.  The events that occurred while Ryan's truck was pulled over were captured by a patrol vehicle's dash camera and the video was played for the jury.

Defendant eventually abandoned the truck and fled on foot in a residential neighborhood.  He was taken into custody later that same day.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant first argues substantial evidence does not support his carjacking conviction.  He claims there is insufficient evidence from which a reasonable jury could have concluded that he used force or fear to take Ryan's truck.  We disagree.

---

[2]  The police officer followed Ryan's Toyota truck after a bystander pointed in the direction of the truck and said, "Hey, he got in a white truck."

A. *Standard of Review*

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

" ' "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

"A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

B. *Applicable Legal Principles*

To obtain a conviction for carjacking, the prosecution must prove that: (1) the defendant took a motor vehicle that was not his; (2) the vehicle was taken from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle; (3) the vehicle was taken against that person's will; (4) the defendant used force

5

or fear to take the vehicle or to prevent that person from resisting; and (5) when the defendant used force or fear to take the vehicle, he intended to deprive the other person of possession of the vehicle either temporarily or permanently.  (See § 215; *People v. Magallanes* (2009) 173 Cal.App.4th 529, 534; CALCRIM No. 1650.)

The carjacking statute (§ 215) does not define the degree of force required to support a conviction, and the pattern jury instruction on carjacking (CALCRIM No. 1650) does not define the force requirement.  (*People v. Hudson* (2017) 11 Cal.App.5th 831, 835-836 (*Hudson*).)  Because the Legislature modeled the carjacking statute (§ 215) on the robbery statute (§ 211), courts rely on case law construing the robbery statute as guidance in carjacking cases.  (*Hudson*, at p. 835; see also *People v. Lopez* (2017) 8 Cal.App.5th 1230, 1234.)  Thus, the force used in carjacking, as in robbery, must be motivated by the intent to commit the crime and applied for the purpose of accomplishing the taking.  (*People v. Anderson* (2011) 51 Cal.4th 989, 994.)

As relevant here, "fear" for purposes of carjacking means fear of injury to the person himself or herself or to the person's property.  (See CALCRIM No. 1650; § 212.)

" ' "The terms 'force' and 'fear' as used in the definition of the crime of robbery [and the crime of carjacking] have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." ' "  (*People v. Lopez*, *supra*, 8 Cal.App.5th at p. 1235; see also *Hudson*, *supra*, 11 Cal.App.5th at p. 836.)  "In terms of the amount of force required to elevate a taking to a robbery [or carjacking], 'something more is required than just that quantum of force which is necessary to accomplish the mere seizing of the property.'  [Citation.]  But the force need not be great:  ' " '[a]ll the force that is required to make the offense a robbery [or carjacking] is such force as is actually sufficient to overcome the victim's resistance' " ' "  (*Lopez*, at p. 1235; see also *Hudson*, at pp. 835-836.)

Although force or fear must be used against the victim to gain possession of the vehicle, the timing " 'in no way depends on whether the confrontation and use of "force

6

or fear" occurs before, while, or after the defendant initially takes possession of the vehicle.' " (*People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1133.)

C. *Analysis*

In resolving defendant's sufficiency of the evidence claim, our analysis is limited to the force or fear element, as it is the only element challenged on appeal. With respect to force, defendant argues that while he may have pushed Ryan out of the truck as he was moving his body into the driver's seat, such force was not enough to elevate the taking of the truck to a carjacking because it "did not amount to anything more than the quantum of force necessary to obtain possession of [the] truck." We are unpersuaded.

Ryan's testimony provided substantial evidence that defendant, in taking the truck, used force sufficient to overcome Ryan's resistance. Ryan testified that defendant ran up to his truck and "jumped" into the front passenger seat before he could lock the door. Ryan further testified that, after he realized defendant was fleeing from the police, he pulled over and told defendant to get the "fuck out" of the truck and "start going." Defendant did not do so. Thereafter, Ryan started to get out of the truck with his hands up. When multiple officers ordered him at gunpoint to get back into the truck, and he attempted to comply, defendant, who was a "[b]ig guy," pushed Ryan out of the truck and sped off. On this record, there was sufficient evidence to satisfy the force element of carjacking, as a reasonable jury could have concluded that defendant used force against Ryan in excess of that necessary to accomplish the mere taking of the truck. (See *Hudson, supra*, 11 Cal.App.5th at p. 838 [while the defendant's seizure of the car-- climbing into the driver's seat and starting the car with a stolen fob--was peaceful, the movement of the car following the victim's resistance--telling the defendant to stop, banging on the trunk, and opening the driver's door--was actual force applied by the defendant to overcome the victim's resistance].)

7

Because there was sufficient evidence to satisfy the force element, we need not and do not consider whether there was substantial evidence to support a finding that defendant used fear to take Ryan's truck.

## II

### *Alleged Instructional Errors*

Defendant raises two claims of instructional error, which we review de novo. (*People v. Parker* (2022) 13 Cal.5th 1, 66; *People v. Rivera* (2019) 7 Cal.5th 306, 326.) As we next explain, we see no basis for reversal.

### A. *Lesser Related Offenses*

Defendant initially argues the trial court committed prejudicial error by instructing the jury that vehicle theft is a lesser included offense of carjacking, and that attempted vehicle theft is a lesser included offense of attempted carjacking. He argues that the error "inappropriately steered the jury away from outright acquittals and towards convictions for the charged offenses" as the references to vehicle theft were not correctly classified as lesser included offenses. The People respond that defendant forfeited this claim by failing to object in the trial court and, in any event, there was no instructional error because defendant implicitly consented to the challenged instructions by failing to object. In making their implicit consent argument, the People concede that vehicle theft is not a lesser *included* offense of carjacking but argue the trial court did not err in instructing the jury on the lesser *related* offenses of vehicle theft and attempted vehicle theft because the parties agreed the jury could be so instructed. The People have the better argument.

### 1. *Additional Background*

As noted, *ante*, defendant was charged with attempting to carjack Valerie and carjacking Ryan.

Following the close of evidence, the parties and trial court engaged in an unreported jury instruction conference. Thereafter, the parties confirmed on the record that they agreed to the language of the verdict forms and instructions that should be given

8

to the jury, including instructions on the *uncharged* offenses of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a); commonly referred to as vehicle theft) and attempted unlawful driving or taking a vehicle (Pen. Code, § 664, Veh. Code, § 10851, subd. (a); commonly referred to as attempted vehicle theft).[3]

Prior to deliberations, the jury was instructed on the charged carjacking offenses pursuant to CALCRIM No. 1650, and the uncharged offenses of vehicle theft and attempted vehicle theft pursuant to CALCRIM No. 1820. As to the uncharged offenses, the jury was instructed that the crime of vehicle theft was a lesser *included* offense of carjacking, and that the crime of attempted vehicle theft was a lesser *included* offense of attempted carjacking. The jury was also instructed with CALCRIM No. 3518, which informed the jurors that they could not find defendant guilty of a lesser included offense (i.e., vehicle theft or attempted vehicle theft) unless they found that he was *not* guilty of the greater charged offense (i.e., carjacking or attempted carjacking).

The verdict forms also directed the jurors to only consider the lesser offenses of vehicle theft and attempted vehicle theft if they found defendant not guilty of the charged offenses of carjacking and attempted carjacking.

    2. *Analysis*

As an initial matter, we agree with the parties that vehicle theft (Veh. Code, § 10851, subd. (a)) is not a lesser included offense of carjacking under the elements test. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1035 (*Montoya*).)[4] It necessarily follows

---

[3] Hereafter, for purposes of consistency and clarity, we refer (as the parties did in the trial court and now on appeal) to the uncharged offenses as vehicle theft and attempted vehicle theft.

[4] The crime of vehicle theft is committed when a person "drives or takes a vehicle not his or her own, without the consent of the owner . . . and with intent either to permanently or temporarily deprive the owner . . . of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle." (Veh. Code, § 10851, subd. (a).) In

9

that attempted vehicle theft is not a lesser included offense of attempted carjacking under that test.

The People do not argue, and we do not see, that vehicle theft is a lesser included offense of carjacking under the accusatory pleading test or that attempted vehicle theft is a lesser included offense of attempted carjacking under that same test. The accusatory pleading test "looks to whether ' " 'the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified [some] lesser offense is necessarily committed.' " ' " (*Montoya*, *supra*, 33 Cal.4th at p. 1035.) Here, the operative pleading does not allege that defendant took a vehicle *owned* by Ryan without his consent or attempted to take a vehicle *owned* by Valerie without her consent. Thus, the pleading as to the greater offenses of carjacking and attempted carjacking does not include the requisite allegations for the lesser offenses of vehicle theft or attempted vehicle theft. (See *id.* at pp. 1034-1036.)

Despite the erroneous classification of the related offenses as included offenses, we see no reversible error, as we next explain.

" ' "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable

---

*Montoya*, our Supreme Court held that this crime "is not a lesser included offense of carjacking because a person can commit a carjacking without necessarily committing an unlawful taking of a vehicle." (*Montoya*, *supra*, 33 Cal.4th at p. 1035.) This is because " '[c]arjacking is a crime against the possessor or passengers in a vehicle. [Vehicle theft] is a crime against ownership.' " Applying the elements test to these offenses, vehicle theft "is not a lesser included offense of carjacking because a person can commit a carjacking without necessarily committing an unlawful taking of a vehicle." (*Id*. at p. 1035.)

10

opportunity properly to prepare a defense and avoid unfair surprise at trial." ' "
(*People v. Anderson* (2020) 9 Cal.5th 946, 953.)

"An accusatory pleading provides notice of the specific offense charged and also of offenses included within the charged offense [citations], but it does not provide notice of nonincluded offenses; consequently, '[a] person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense' [citation].

"However, an exception to this rule has long been recognized in cases where a defendant expressly or impliedly consents to have the trier of fact consider a nonincluded offense: 'Since a defendant who requests or acquiesces in conviction of a lesser offense cannot legitimately claim lack of notice, the court has jurisdiction to convict him of that offense.' " (*People v. Toro* (1989) 47 Cal.3d 966, 973, disapproved on another ground in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) A defendant can consent to conviction of a nonincluded offense when the defendant requests jury instructions on a lesser offense or when such instructions are given by the court sua sponte and no defense objection was raised to either the instructions or the verdict forms by which the nonincluded offense was submitted to the jury. (*Toro*, at pp. 973-974; see *id.* at pp. 977-978.) Here, defendant consented to the presentation to the jury of the nonincluded offenses, and the jury did not find guilt as to those offenses, but instead found defendant guilty as originally charged.

In *Toro*, our Supreme Court held that the defendant's failure to object on notice grounds to jury instructions and verdict forms on a lesser related offense forfeited his inadequate notice claim on appeal. (*Toro, supra*, 47 Cal.3d at pp. 976-977.) The court considered the failure to object as implied consent to the trier of fact's consideration of the lesser related offense. (*Id.* at pp. 976-978.) In so holding, the *Toro* court emphasized that the "submission of lesser related offenses to the jury enhances the reliability of the

11

fact-finding process to the benefit of both the defendant and the People." (*Id.* at pp. 969-970; see also *id.* at p. 977 ["Lesser related offense instructions generally are beneficial to defendants and in a given case only the defendant knows whether his substantial rights will be prejudicially affected by submitting a lesser related offense to the jury"].)

Here, the record reflects that, as to the charged offenses of attempted carjacking and carjacking, defendant expressly consented to having the jury instructed on the lesser related offenses of attempted vehicle theft and vehicle theft. Following the unreported jury instruction conference, the parties stated on the record that they agreed as to the instructions that should be given to the jury, which included the instructions challenged on appeal. And at no point did defendant object to the challenged instructions or to the verdict forms given to the jury. As such, defendant's claim of instructional error fails. (See *Toro, supra*, 47 Cal.3d at p. 973 [a defendant who requests or acquiesces to jury instructions on a lesser offense expressly or impliedly consents to conviction of that offense]; see also *id.* at p. 977 ["instructing on a nonincluded offense may not be cited as error on appeal if the defendant had an opportunity to object to the instructions but failed to do so and the offense is lesser in degree and penalty than the charged offense"].) Although defendant protests that "the issue here is not . . . lack of notice," he is mistaken. As we have explained, because defendant consented to the inclusion of the lesser related instructions as given, the court's actions here were simply not error, regardless of the misclassification of the lesser offenses as "included" rather than "related." Thus, defendant's attempts to argue prejudice from nonexistent error fail as well.[5]

---

[5] There is no dispute that the crime of vehicle theft is lesser in degree and penalty than the crime of carjacking. Carjacking is punishable by imprisonment in the state prison for a term of three, five, or nine years (§ 215, subd. (b)), whereas vehicle theft is punishable by imprisonment in county jail for not more than one year (Veh. Code, § 10851, subd. (a)). Under the attempt statute, the punishment for these crimes is one-half the term prescribed upon conviction of the attempted offense. (§ 664, subds. (a), (b).)

B. *Force Instruction*

Next, defendant argues the trial court committed prejudicial instructional error by defining the term "force." He claims the term has no technical meaning for purposes of carjacking, and therefore the meaning of the term should have been "left to the jury's common sense."

1. *Additional Background*

As previously indicated, the trial court instructed the jury on the carjacking offenses pursuant to CALCRIM No. 1650. Although the pattern instruction on carjacking does not include a definition of the term "force," the parties agreed that the jury could be instructed on that element as follows: "Force is a factual question to be determined by the jury using its own common sense. The force required must be more than the incidental touching necessary to take the property."

During closing argument, the parties focused on the force or fear element of the carjacking offenses. As for the force element, the prosecutor told the jury: "Force. It's the common-sense meaning of force. In addition, that force can't be incidental. It actually has to be some application of force against that person."

In urging the jury to find defendant guilty of the attempted carjacking offense, the prosecutor argued that defendant used force to take Valerie's car. In support of his position, the prosecutor noted that, after defendant crashed his car while fleeing from the police, he quickly approached Valerie's car and "pull[ed]" on her door handle as he said, in a "forceful tone," that he wanted or needed a ride. The prosecutor further noted that defendant attempted to unlock the rear driver's side door of the car by reaching through the window after Valerie rolled her window up and was attempting to roll the rear window up.

In arguing that defendant used force to take the Toyota truck, the prosecutor noted that, following defendant's interaction with Ryan, defendant "jumped" into the truck before Ryan could lock the door. The prosecutor further noted that Ryan told defendant

13

to "[g]et the 'F' out" of the truck after realizing that defendant was "running from the police." But defendant did not get out of the truck; instead, he pushed or shoved Ryan out of the truck and then sped off, driving like a "maniac" for another 15 miles.

Defense counsel responded by arguing that the force or fear element had not been satisfied as to the carjacking offenses. With respect to the force element, defense counsel told the jury: "Force has to be more than some sort of incidental touching that's necessary to actually accomplish the theft. Something more than the incidental touching."

In urging the jury to find defendant not guilty on the attempted carjacking offense, defense counsel conceded that Valerie was scared but argued that the prosecution had failed to prove defendant used force or fear in attempting to take her car. In making this argument, counsel noted that defendant did not threaten to harm Valerie or her property, did not demand entry into her car, did not use or display a weapon, and did not touch her car in a violent or aggressive manner (e.g., pound on it or punch it). Counsel claimed that defendant, at most, grabbed the handle of Valerie's door while saying that he wanted or needed a ride.

In arguing that defendant was not guilty of the carjacking offense, defense counsel claimed that the force or fear element had not been satisfied because defendant only touched Ryan with his leg or arm as he was moving his body into the driver's seat of the truck, which was incidental touching necessary to take control of the truck. In making this argument, counsel noted that defendant did not make any threats to harm Ryan or his property, did not display any weapon or otherwise "instill fear" in Ryan, and that Ryan never claimed he was scared of defendant.[6]

---

[6] As to counts three through five, defendant's theory was that he did not commit any crime against Valerie, was guilty of vehicle theft as to Ryan, and was guilty of the remaining evading offense.

14

### 2. *Applicable Legal Principles*

It is well-established that the definition of "force" has no technical meaning peculiar to the law and jurors are presumed to understand the meaning of the term. (*People v. Anderson* (1966) 64 Cal.2d 633, 639-640 (*Anderson*); *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708.)  Because the word "force" has no technical meaning peculiar to the law, a jury instruction as to the meaning of the term is not required. (*Anderson*, at p. 639.)

"Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court. [Citations.]  The rule of forfeiture does not apply, however, if the instruction was an incorrect statement of the law [citation], or if the instructional error affected the defendant's substantial rights." (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.)

In determining whether a defendant's substantial rights were affected by a claimed instructional error, "[t]he question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.)  In other words, we must determine whether it is reasonably probable the defendant would have obtained a more favorable result absent the error. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 499.)  Ascertaining whether the error affected the defendant's substantial rights " 'necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was.' " (*People v. Johnson* (2022) 79 Cal.App.5th 1093, 1113.)  In assessing prejudice, "the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1130.)

### 3. *Analysis*

We see no basis for reversal. The definition of force given to the jury was not an incorrect statement of the law. (See *Hudson, supra*, 11 Cal.App.5th at p. 835 [in the context of carjacking, the law requires that " 'the perpetrator exert some quantum of force in excess of that "necessary to accomplish the mere seizing of the property" ' "]; see also *People v. Anderson, supra,* 51 Cal.4th at p. 995.) Defendant, for his part, does not argue otherwise. And defendant has failed to adequately explain, let alone provide legal analysis showing, how he was prejudiced by the asserted instructional error. Without citation to evidence in the record, defendant simply states that "this was a close case on the element of force or fear" and the evidence on that element was "extremely weak." Defendant also notes in passing that the jury requested readback of Valerie's testimony, which, in his view, suggested that the jury "had uncertainty" as to the force or fear element because it was the only contested element of the attempted carjacking count. Given defendant's inadequate briefing, we deem his prejudice argument forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 [the appellant has the burden to demonstrate error "by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited"].) In any event, we have reviewed the entire record and are convinced that defendant's substantial rights were not affected by the asserted instructional error because it is not reasonably probable he would have obtained a more favorable result if the trial court had not given the challenged instruction. In light of our conclusion, no further discussion of this issue is required.[7]

---

[7] Defendant argues that cumulative error compels reversal of the judgment. We have not found multiple trial court errors, and therefore his claim lacks merit.

16

III

*Alleged Sentencing Error*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168 (*Dueñas*), defendant argues the trial court imposed a $300 minimum restitution fine (§ 1202.4, subd. (b)(1)) without holding an ability to pay hearing in violation of his due process rights. He further contends his trial counsel was ineffective for failing to object fine. The People respond that defendant forfeited his claim by failing to object at sentencing and, in any event, the claim fails on the merits.

We agree defendant has forfeited his claim of sentencing error. He did not request an ability to pay hearing based on *Dueñas* or otherwise assert his inability to pay the restitution fine in connection with sentencing, which occurred years after *Dueñas* was issued. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 624 [failure to request ability to pay hearing based on *Dueñas* forfeits argument on appeal].) However, given defendant's alternative argument regarding counsel's effectiveness, we reach the merit of his claim and conclude the claim of error fails to persuade. In *Dueñas*, *supra*, 30 Cal.App.5th 1157, the court found that due process principles mandate an ability to pay hearing before imposing an unstayed restitution fine under section 1202.4, subdivision (b)(1). (*Dueñas*, at p. 1164.) The Courts of Appeal are split as to whether *Dueñas* was correctly decided. Our Supreme Court must resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which concluded due process requires the trial court to conduct an ability to pay hearing before imposing assessments but not restitution fines. (*Id*. at pp. 95-96.)

In the meantime, we join the court in *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted November 26, 2019, S258946, and several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the minimum restitution fine at issue here. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272,

17

279; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

Failure to assert a meritless position does not demonstrate ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

**DISPOSITION**

The judgment is affirmed.

/s/<br>Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.